UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JAMES WILLIAMS, JR., *et. al.*,<br>Defendants. | Case No. 2:18-cr-00221-MMD-DJA<br><br>ORDER |

I. **SUMMARY**

The jury returned a guilty verdict against Defendant James Williams, Jr. on one transaction of False Statement During Purchase of a Firearm charged in count one. Before the Court is Williams's Motion for Judgment of Acquittal Under Fed. R. Crim. P. 29(c) and Alternative Motion for a New Trial Under Fed. R. Crim. P. 33 ("Motion")[1]. (ECF No. 141.) For the reasons discussed below, the Court denies the Motion.

II. **RELEVANT BACKGROUND**

Williams was indicted on two counts: False Statement During Purchase of a Firearm in violation of 18 U.S.C. § 924(a)(1)(A)[2] (count one) and Illegal Acquisition of a Firearm in violation of 18 U.S.C. § 922(a)(6) and 924(a)(2) (count two). (ECF No. 85.) Count one enumerated 13 transactions between May 25, 2017 and May 26, 2018 where Williams knowingly stated on ATF form 4473 ("the Form") that his "place of residence was a physical address in Las Vegas, Nevada, to wit: 6389 Brianna Peak Ct." when in truth he

///

///

---

[1] The Court has reviewed the government's response (ECF No. 143) and Williams's reply (ECF No. 144).

[2] Williams's co-defendant Taisia Soloai Fauolo is indicted on one count of illegal receipt of a firearm by person under indictment (count three). (ECF No. 85.)

1 | did not reside there[3]. (*Id.* at 1–2.) The jury convicted Williams of only the last transaction—
2 | the May 26, 2018 transaction ("May 2018 Transaction")—in count one; and found him not
3 | guilty as to the first 12 transactions in count one and as to count two.

## III. LEGAL STANDARD

### A. Acquittal Under Rule 29

The test for denial of a judgment of acquittal pursuant to Fed. R. Crim. P. 29 is the same as the test for reviewing a claim that the evidence is insufficient to support a conviction. *See, e.g., United States v. Tucker*, 641 F.3d 1110, 1118–19 (9th Cir. 2011); *United States v. Abner*, 35 F.3d 251, 253 (6th Cir. 1994). A criminal defendant's challenge to the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *Jackson* requires a court, upon such a motion, to construe the evidence "in the light most favorable to the prosecution" to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (emphasis in original).

### B. New Trial under Rule 33

Pursuant to Fed. R. Crim. P. 33(a), "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Although determining whether to grant a motion for a new trial is left to the district court's discretion, "it should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981) (citation and internal quotation marks omitted). Moreover, the defendant bears the burden of persuasion. *United States v. Endicott*, 869 F.2d 452, 454 (9th Cir. 1989). Such an extraordinary remedy is appropriate, for example, when a court makes an erroneous ruling during the trial and that, but for that erroneous ruling, the outcome of the trial would have

///

---

[3] The elements for count one are: (1) the defendant knowingly made a false statement or representation; and (2) the statement pertained to information required by law to be kept in the records of a person licensed as a firearms dealer, importer, manufacturer, or collector. *See* 18 U.S.C. § 924(a)(1)(A).

2

been more favorable to the defendant. *See United States v. Butler*, 567 F.2d 885, 891 (9th Cir. 1978).

## IV. DISCUSSION

Williams renews his Rule 29 motion raised at the close of the government's case and asserts additional arguments in support of his Motion. The Court will address each argument in turn.

### A. Claimed Insufficient Evidence to Support Conviction as to May 2018 Transaction

Williams contends that because the only difference between the May 2018 Transaction and the first 12 transactions was evidence of AFT Special Agent Gregory Painton's March 2018 phone conversation with Williams, the jury must have drawn an unreasonable inference as to Williams's knowledge. (ECF No. 141 at 9–12.) But as the government correctly points out (ECF No. 143 at 5–7), the Court does not examine whether the jury's verdict is consistent so long as there is sufficient evidence to support the verdict. *See United States v. Powell*, 469 U.S. 57, 58 (1984)[4] (acknowledging that "a criminal defendant convicted by a jury on one count could not attack that conviction because it was inconsistent with the jury's verdict of acquittal on another count") (citing *Dunn v. United States*, 284 U.S. 390 (1932)).

Here, the Court finds that sufficient evidence supports the verdict. First, the Court agrees with the government that additional evidence, not just Painton's testimony as to the March 2018 phone conversation with Williams, distinguishes the May 2018 Transaction from the previous transactions. (ECF No. 143 at 7–9.) Specifically, the government offered the following evidence in connection with the immediately preceding transaction on January 18, 2018 ("January 2018 Transaction"): Williams purchased four

///

---

[4]In *Powell*, the government did not dispute the contention that the jury's verdict — acquitting defendant of conspiracy to possess cocaine and possession of cocaine, but finding her guilty of using the telephone to facilitate those offenses — was inconsistent. 284 U.S. at 479. However, the Court declined to create an exception to the established rule in *Dunn*, even though the jury's verdicts "cannot be rationally reconciled." *Id.*

firearms at Ventura Munitions; Williams walked out of Ventura Munitions with a Glock bag and two hard case firearms cases; Williams walked over to a gas station next door where he was picked up in a black Jeep; Jeep drove to a residence where an individual later identified as Taisia Sololai Fauolo, a prohibited person, took the bad and hard cases from the Jeep into the house; Fauolo then returned to the Jeep's passenger side door and appeared to hand something through the window; and agents located the four firearms in a subsequent search of that residence. (ECF No. 139 at 101–14.) During the March 2018 telephone conversation with Painton, Williams "said he still lives in town, but wouldn't give [Painton] any specifics" in response to Painton's question about Williams's residence. (*Id.* at 118–19.)

Viewing the evidence as to the January 2018 Transaction and Painton's March 2018 call with Williams in the light most favorable to the government, the jury could reasonably find that Williams knowingly provided a false statement relating to his place of residence in connection with the May 2018 Transaction. The jury could have also found that Williams may have mistakenly left that address on the form before the January 2018 Transaction, but that his continued use of that address after the March call, was no longer a mistake.[5] Said differently, the jury could have reasonably inferred that because Painton asked Williams about where he resides, Williams's continued identification of the Brianna Peak Ct. address was not due to a mistake.

Williams argues that the jury could not have drawn any inference from the January 2018 Transaction because there was no evidence that Williams was aware that AFT had seized the firearms in question. (ECF No. 144 at 5.) But the jury could have reasonably inferred that Williams was aware of ATF's investigation based on the March 2018 call with Painton. As noted, based on the March 2018 call and the January 2018 Transaction, the jury could have reasonably concluded that Williams did not purchase the firearms in

///

---

[5] Antoine Meeks testified that he moved into the Brianna Peak Ct. in the summer of 2017 and has two other roommates, but Williams has not lived there. (ECF No. 138 at 118-21.) Meeks also testified that Williams had mail and magazines sent to that residence. (*Id.* at 122.)

4

question for himself and from that find circumstantial evidence of Williams's knowledge that his statement as to his residence in the May 2018 Transaction was false.

### B. Claimed Duplicity of Count One

Williams argues that count one improperly joins 13 separate transactions and is therefore impermissibly duplicitous. (ECF No. 141 at 12–13.) The government counters that Williams waived this argument by not raising it before trial and any duplicity was cured by the use of the Special Verdict Form and the Court's instruction to the jury. (ECF No. 143 at 9–10.) The Court fully agrees with the government.

Williams waived any argument that count one was defective by improperly joined separate offenses because he did not raise this objection before trial. *See United States v. Gordon*, 844 F.2d 1397, 1400 (9th Cir. 1988) ("Fed. R. Crim. P. 12(b)(2) requires that defenses and objections based on defects in the indictment be raised prior to trial.").

Moreover, the Court did ensure that the jury verdict was unanimous. The Special Verdict Form specifically instructed the jury that if the jury found Williams guilty of count one, "you must identify below each statement that you unanimously agree was knowingly false (check all that apply)." (ECF No 132 at 1.) The only statement that was checked was the statement made in the May 2018 Transaction. (*Id.* at 2.)

"One vice of duplicity is that a jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of a particular offense." *United States v. UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir. 1976). That risk was alleviated by the Special Jury Form. Indeed, the verdict shows the jury followed the form and instruction— they found Williams guilty only as to one transaction in count one.

### C. Alleged Comment on Williams's Decision Not to Testify

Williams contends the government engaged in misconduct during closing by improperly commenting on Williams's decision not to testify. However, because Williams appears to be making two different arguments in his Motion and reply, the Court is compelled to recite both arguments for comparison. The following sums up the argument in the Motion:

> Here, the government impermissibly commented on Mr. Williams's decision not to testify during its closing argument when it referenced Mr. Williams's statements about his residence during his phone call with Painton. The government's closing argument emphasized the fact that Mr. Williams continued to purchase firearms after the March 2018 phone call with Painton. The government drew attention to Painton's testimony about the March 2018 phone call. Yet, the only person who could have refuted these statements about his residence was Mr. Williams, the person on the other end of the phone.

(ECF No. 141 at 14.) The government disputes that this argument was made in closing, pointing out Williams' failure to provide any citation to the transcript. (ECF No. 143 at 10.) In the reply, Williams's argument appears to have changed as best that the Court can discern, though Williams cited to the transcript:

> In its closing argument, the government emphasized Painton was unable to contact Mr. Williams because the listed phone numbers were not working. The inference the government wanted the jury to make was that Mr. Williams did not have working phone numbers because he did not want to be found. Trial Tr. Day 3 7:7-8. The only person who could have explained why the phone numbers were not working was Mr. Williams. By highlighting Painton's inability to contact Mr. Williams, the government impermissibly commented on Mr. Williams's decision not to testify. Afterall, the only person able to refute the government's narrative about Mr. Williams's motivations was Mr. Williams.

(ECF No. 144 at 6.) Under either scenario, Williams's contention is that the government's recitation of Painton's testimony that he tried to contact Williams impermissibly commented on Williams's silence.

This argument is tenuous at best. The government did not point out that Williams failed to dispute Painton's testimony or that there was no evidence to refute Painton's testimony to even whisper as to Williams's silence. The government's recounting of Painton's admitted testimony—about his attempt to contact Williams and his call with Williams—was not improper and does not amount to impermissible comment on Williams's decision not to testify.

**D. Claimed Error in Rejecting Williams's Proposed Special Jury Instruction No. 1**

Williams reiterates his argument in support of his proposed special instruction no. 1 to include the added language about the "current residence address," contending that

Form 4473's definition of "current residence address" is uncleared. (ECF No. 141 at 15-17.) The relevant part of that proposed special instruction as to count one reads:

> Specifically, the indictment alleges Mr. Williams listed "6389 Brianna Peak Count, Las Vegas, Nevada 89142" as his current state of residence and address on ATF Form 4473 when he knew he did not reside at that address.
> For the purposes of ATF Form 4473, a person's "current residence address" is the State and street address where an individual resides. For example, an individual resides in Nevada if he or she is present in Nevada with the intention of making a home in Nevada.
> It is possible for a person to have two or more residences. For example, if an individual is purchasing a firearm while staying at his part-time home in Nevada, he is a resident of Nevada for the purposes of ATF Form 4473.

(ECF No. 119 at 37.) The Court rejected Williams's proposed instruction and adopted the government's proposed special instruction no. 3 (*id.* at 35) which includes only the elements of count one but not the recited examples that Williams included. The Court found that the government's proposed instruction accurately reflects the elements of the offense while Williams's proposed instruction improperly advances his theory of the case, particularly in the examples included in the proposed instructions. (ECF No. 137 at 149.) Indeed, the verdict reflects that the jurors understood the term "current residence address" on Form 4473.

In sum, the Court disagrees that it erred in rejecting Williams's proposed special instruction no. 1 to warrant a new trial.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

///

///

///

///

It is therefore ordered that Williams's Motion for Judgment of Acquittal Under Fed. R. Crim. P. 29(c) and Alternative Motion for a New Trial Under Fed. R. Crim. P. 33 (ECF No. 141) is denied.

DATED THIS 27th day of January 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE